# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**EVERETTE NORWOOD (#375208)**     **CIVIL ACTION**

**VERSUS**

**JAMES D. CALDWELL, ET AL.**     **NO. 14-0595-JWD-EWD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 22, 2017.

                                              *Erin Wilder-Doomes*
                                              **ERIN WILDER-DOOMES**
                                              **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

EVERETTE NORWOOD (#375208)                                    CIVIL ACTION

VERSUS

JAMES D. CALDWELL, ET AL.                                     NO. 14-0595-JWD-EWD

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The State has filed a response in opposition to Petitioner's application, and Petitioner has filed a rebuttal. There is no need for oral argument or for an evidentiary hearing.

Petitioner, Everette Norwood, challenges his 2004 convictions and sentences entered in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on one count of armed robbery and one count of being a felon in possession of a firearm. Petitioner contends (1) that he was provided with ineffective assistance of counsel at trial (2) that the evidence was insufficient to support his convictions, and (3) that the procedure utilized to identify him as the perpetrator of the offenses was unduly suggestive.

A review of the record reflects that Petitioner was charged by bill of information with one count of attempted armed robbery and one count of being a felon in possession of a firearm. After a jury trial conducted in July 2004, Petitioner was convicted on both counts. After the denial of post-trial motions, Petitioner was sentenced to serve twenty-five (25) years in confinement in connection with the attempted armed robbery charge and fifteen (15) years in confinement in connection with the felon-in-possession charge, with the sentences to be served concurrently and without the benefit of probation, parole or suspension of sentence.

Petitioner appealed the convictions asserting (1) that the evidence was insufficient to support the convictions, (2) that the trial court erred in denying a motion for new trial, and (3) that his constitutional right to due process was violated by the non-unanimous jury verdict. On November 4, 2005, the Louisiana Court of Appeal for the First Circuit affirmed Petitioner's convictions and sentences. *See State v. Norwood,* 913 So.2d 894 (La. App. 1st Cir. 2005). Petitioner also sought supervisory review in the Louisiana Supreme Court, which Court denied review, without comment, on September 29, 2006. *See State v. Norwood*, 937 So.2d 851 (La. 2006). Upon the failure of Petitioner to file an application for a writ of certiorari in the United States Supreme Court, his convictions and sentences became final on December 28, 2006 after expiration of the ninety-day period allowed for him to do so. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003) (recognizing that a conviction becomes final after the 90-day period allowed for a petitioner to proceed in the United States Supreme Court if he has not pursued such relief).

Approximately seven months after the finality of his conviction, on or about July 24, 2007,[1] Petitioner filed an application for post-conviction relief ("PCR") in the state trial court, asserting five (5) claims of ineffective assistance of counsel and one (1) claim of racial discrimination in the selection of the jury in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). An attorney was appointed on

---

1    Although Petitioner's application for post-conviction relief was docketed as filed in the state trial court on August 1, 2007, the United States Court of Appeals for the Fifth Circuit has instructed that federal habeas courts within the State of Louisiana must apply Louisiana's "mailbox rule" when determining the filing date of a petitioner's state court filings. Accordingly, pleadings submitted by a *pro se* habeas petitioner are considered to be "filed" in state court as of the moment that the prisoner places them in the prison mail system for submission to the court, not on the date that the pleadings are ultimately docketed by the receiving court. *See Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006); *Lane v. Rogers*, 2012 WL 3160034, *1 n. 3 (E.D. La. June 21, 2012). Thus, inasmuch as Petitioner apparently signed his state court application on July 24, 2007, and presumably gave it to prison officials for mailing on that date, the Court will utilize that date as the presumptive date of filing. In addition, in hereafter referencing the dates of filing of Petitioner's various *pro se* pleadings in the state courts and in this Court, the Court will utilize the dates that Petitioner apparently signed his respective pleadings as the dates of filing thereof in the respective courts unless otherwise noted.

Petitioner's behalf, and an evidentiary hearing was thereafter conducted in connection with one of Petitioner's claims of ineffective assistance, *i.e.,* that Petitioner was denied effective assistance when his attorney failed to investigate Petitioner's daughter, Corsha Johnson, as a potential alibi witness. That hearing was held on August 12, 2010 and re-opened on September 29, 2011 (to allow Corsha Johnson to testify), after which, on May 8, 2012, the state court Commissioner issued a Report recommending that post-conviction relief be granted to Petitioner in connection with that claim. Pursuant to Ruling dated May 6, 2013, the state trial court adopted the Commissioner's recommendation and granted post-conviction relief to Petitioner.

The state sought timely review of the trial court's Ruling by filing a supervisory writ application before the Louisiana Court of Appeal for the First Circuit. On July 29, 2013, the First Circuit Court overturned the lower court's decision and granted the State's writ application. In doing so, the appellate court stated:

> The trial court erred in granting the defendant's application for post-conviction relief based on ineffective assistance of counsel and in ordering a new trial for the defendant. Trial counsel for the defendant made a reasonable and professional strategic decision not to call the defendant's young daughter to testify at his trial as an alibi witness. There is no indication that counsel's performance was deficient. Moreover, even if counsel's decision was determined to be a deficiency, the defendant failed to show that there was a reasonable probability that but for counsel's error the result of the proceeding would have been different. *See Strickland v. Washington*.

*State v. Norwood*, 2013 WL 12120737 (La. App. 1st Cir. July 29, 2013) (citation omitted).

In response to the Ruling of the intermediate appellate court, Petitioner's appointed attorney filed a writ application before the Louisiana Supreme Court, delivering same by hand delivery through a private courier service (Federal Express) on August 29, 2013. Petitioner also submitted a separate *pro se* writ application which was signed by him on September 6, 2013 and presumably placed in the prison mail system on that date. Pursuant to separate Rulings dated June 20, 2014, the Louisiana Supreme Court denied both writ applications. As for the counseled application, the Court indicated

that the writ was "[n]ot considered" because it was "not timely filed." *See State v. Norwood*, 141 So.3d 276 (La. 2014). As for Petitioner's *pro se* application, the Court denied the application in a one-word denial, with two justices indicating that they would grant the writ. *See State ex rel. Norwood v. State*, 141 So.3d 277 (La. 2014).

Finally, approximately three months after the above-referenced writ denials, on or about September 10, 2014, Petitioner filed his federal habeas corpus application before this Court. Based on the foregoing procedural recitation, the State contends that Petitioner's application should be dismissed as untimely.

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This limitations period begins to run on the date that the judgment becomes final through the conclusion of direct review or through the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). As provided by the referenced statute, the time during which a properly filed application for state post-conviction or other collateral review is thereafter pending before the state courts with respect to the pertinent judgment or claim shall not be counted toward any part of the one-year limitations period. 28 U.S.C. § 2244(d)(2). However, the time during which there are not any post-conviction or other collateral review proceedings pending does count toward calculation of the one-year period. *Flanagan v. Johnson,* 154 F.3d 196, 199 n. 1 (5th Cir. 1998). *See also Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998). To be considered "properly filed" for purposes of § 2244(d)(2), an application's delivery and acceptance must be in compliance with the applicable laws and procedural rules governing filings. *Pace v. DiGuglielmo*, 544 U.S. 408, 413 (2005), *citing Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Further, a state application is "pending" both while it is before a state court for review and also during the interval of time after a state court's disposition while the petitioner or the State is procedurally

authorized under state law to proceed to the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001).

In the instant case, as noted above, Petitioner's conviction became final on December 28, 2006, ninety (90) days after denial of his application for supervisory review in the Louisiana Supreme Court in connection with his direct appeal. *See Roberts v. Cockrell, supra*, 319 F.3d at 694. The one-year time clock then began to run on that date, and it appears that Petitioner allowed two hundred eight (208) days of un-tolled time to elapse prior to filing his PCR application in the state district court on or about July 24, 2007. As provided by the above-referenced statute, this filing interrupted the running of the limitations period, and the limitations period remained tolled during the pendency of Petitioner's lengthy PCR proceedings in the state trial court. Ultimately, an evidentiary hearing was conducted in August 2010 and continued in September 2011 in connection with one of Petitioner's claims of ineffective assistance. After the referenced hearing and after the filing of post-hearing memoranda, the trial court granted relief in favor of Petitioner on May 6, 2013 and remanded the matter for a new trial upon a finding that Petitioner had in fact received ineffective assistance of counsel at trial.

The limitations period also remained tolled by operation of law for an additional thirty (30) days after the court's Ruling, or until June 5, 2013, because Louisiana procedural law provides for a 30-day period to proceed to the next level of state review, *see* Rule 4-3, Uniform Rules, Louisiana Court of Appeal, and because, as explained above, the limitations period remains tolled both during the time that a properly-filed post-conviction review application is pending before the state trial court and during the interval after the ruling thereon when there is the right under state law to proceed to the next level of appellate review. *Melancon v. Kaylo, supra*, 259 F.3d at 406. Thus, tolling continued without interruption when the State filed a timely application for supervisory review in the Louisiana

Court of Appeal for the First Circuit on June 5, 2013, continuing the post-conviction proceedings and contesting the grant of relief to Petitioner.

Finally, the limitations period remained tolled during the pendency of the State's writ application in the intermediate appellate court, *i.e.,* until July 29, 2013, when the appellate court issued a Ruling overturning the lower court decision and reinstating Petitioner's convictions and sentences. The limitations period also remained tolled for an additional thirty days thereafter, as provided by state procedural rules, during which time Petitioner was authorized to file a supervisory writ before the Louisiana Supreme Court. *See* Louisiana Supreme Court Rule X, § 5(a). Petitioner, however, did not meet that thirty-day deadline. Instead, his appointed post-conviction attorney filed a writ application in the Louisiana Supreme Court, and that attorney missed the deadline by filing that application one day late on August 29, 2013. Whereas Petitioner also filed a *pro se* writ application before the Louisiana Supreme Court, that application was signed and presumably filed on September 6, 2013 and so was also not within the deadline established by Rule X. As discussed hereafter, this failure proves fatal to consideration of Petitioner's claims before this Court.

In contrast to an untimely writ application filed before the intermediate appellate court, which has been held, pursuant to *Melancon v. Kaylo, supra*, to be "properly filed" and "pending," even though untimely, because it requires "some level of judicial review," an untimely writ application filed before the Louisiana Supreme Court is not subject to such review. *See* Louisiana Supreme Court Rule X, § 5(a). This Rule provides that a writ application before that Court, "shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal" and, further, that "[n]o extension of time therefor will be granted." As a result, the filing of an untimely writ application before the Louisiana Supreme Court does not toll the limitations period because it is not seen to be "properly filed" and is therefore not "pending" before that Court. *See Williams v. Cain*, 217 F.3d 303, 308 (5th Cir. 2000) (finding that no exceptions and no examination are contemplated by Louisiana

Supreme Court Rule X § 5(a) and, therefore, that compliance with the time requirement is necessary for a prisoner's application for post-conviction relief to be considered "properly filed" and "pending" under section 2244(d)(2)). *See also Jenkins v. Cooper*, 2009 WL 1870874, *5 (E.D. La. June 26, 2009) (holding that a petitioner does not benefit from any statutory tolling for an untimely writ application filed in the Louisiana Supreme Court because "[a] writ application which fails to comply with La. S.Ct. Rule X § 5(a) is not properly filed because it is untimely, and it is not pending post-conviction review for purposes of the ... statute of limitations and tolling doctrines"). Accordingly, the pendency of Petitioner's untimely writ application in the Louisiana Supreme Court never interrupted the running of the limitations period. *See Williams v. Cain, supra*. Thus, this Court is required to count against the time clock the period between August 29, 2013, the day after the last day allowed to Petitioner to seek timely review before the Louisiana Supreme Court, and September 10, 2014, the date of filing of his federal habeas corpus petition in this Court. This results in a finding that no fewer than an additional three hundred seventy-seven (377) days of un-tolled time elapsed, or more than a year, during which Petitioner did not have pending before the state courts any properly filed application for post-conviction or other collateral relief. Accordingly, Petitioner's application in this Court is untimely.

In seeking to avoid the effect of the limitations bar in this case, Petitioner acknowledges that his *pro se* writ application before the Louisiana Supreme Court was untimely-filed because he concedes that he "filed his *pro se* writ application on or about September 6, 2013." *See* R. Doc. 10 at p. 2. Notwithstanding, Petitioner goes on to state, without support, that "the Louisiana Supreme Court ruled on petitioner's writ application with two (2) Justices dissenting, therefore, proving that the writ application was in fact timely." *See id.* In the Court's view, however, the record does not support Petitioner's assertion in this regard. Specifically, it has been repeatedly held in this Circuit that a one or two-word denial of an untimely-filed writ application in the Louisiana Supreme Court, *i.e.*, "denied"

or "writ denied," is not an indication that the Supreme Court reviewed the merits of the case or otherwise found the application to be timely. *See, e.g., Williams v. Cain, supra*, 217 at 308 n. 6. *See also Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008). Thus, courts have not hesitated to find that untimely writ applications in the Louisiana Supreme that were denied with such denials did not interrupt the subsequent running of the limitations period, even where the filings were as little as one day late. *See Holt v. Cain*, 2013 WL 3490900 (E.D. La. July 10, 2013) (one day late); *Fields v. Cain*, 2012 WL 5472422 (E.D. La. July 24, 2012), *supplemented by Fields v. Cain*, 2012 WL 5472547 (E.D. La. July 24, 2012) (same); *Knight v. Cain*, 2009 WL 3241570 (E.D. La. Oct. 1, 2009) (same). *See also Roddy v. Cain*, 2011 WL 2882835 (M.D. La. May 12, 2011) (same), *remanded on other grounds, Roddy v. Cain*, 467 Fed. Appx. 292 (5th Cir. 2012). In addition, the fact that the Louisiana Supreme Court had before it on the same date in this case two writ applications involving the same petitioner and convictions, one counseled writ and one *pro se*, and explicitly rejected the earlier-filed counseled application as untimely, in no way suggests that the Court then considered the later-filed *pro se* application to be timely-filed merely because the Court failed to make a reference to timeliness. Instead, any potential ambiguity that may be drawn from such failure is more likely attributable to the reasoning employed by the United States Supreme Court in *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002), which recognized that there are legitimate reasons why a state court might provide alternative merits grounds for denying a clearly stale application, including to show a *pro se* prisoner "that it was not merely a procedural technicality that precluded him from obtaining relief." In presenting his *pro se* writ application to the Louisiana Supreme Court in this case, Petitioner offered no clear explanation, argument or appeal to the Court as to why his application should be considered anything other than

untimely.[2]   This Court, therefore, will not interpret the Supreme Court's denial of review in connection with Petitioner's writ application as a determination that it was timely.[3]

Having found Petitioner's application to be untimely, this Court must dismiss same pursuant to 28 U.S.C. § 2244(d) unless Petitioner can establish either that he is entitled to statutory tolling of the limitations period under § 2244(d)(1)(B) – because there was a state-created impediment to timely filing – or that he is entitled to equitable tolling.

To establish entitlement to statutory tolling under 28 U.S.C. § 2244(d)(1)(B), Petitioner must show that some state action, in violation of the Constitution or federal law, prevented him from filing

---

2   Petitioner asserts that after the State signified its intention to seek review of the trial court ruling overturning Petitioner's convictions and sentences, Petitioner wrote several letters to the Louisiana Court of Appeal inquiring about the status of the State's writ application.  It appears that the Court of Appeal responded by advising Petitioner to contact his attorney for information.  The subsequent July 29, 2013 decision of the Court of Appeal reinstating Petitioner's convictions and sentences was in fact forwarded to Petitioner's attorney of record on that date, and Petitioner concedes that he was thereafter provided with a copy of that decision on or about August 13, 2013, at which time he had two weeks remaining within which to forward a timely *pro se* writ application to the Louisiana Supreme Court.

3   In contrast to the Court's determination in this regard, the Court notes the decision of the Louisiana Eastern District Court in *Lee v. Cain*, 2009 WL 3319670 (Oct. 13, 2009), wherein that Court concluded that ambiguity in the Louisiana Supreme Court's two-word denial of review of a late-filed writ application warranted a conclusion that the Court had potentially decided the case on the merits. In *Lee,* however, the basis for that finding was the existence of a reasoned dissent by one justice that addressed the merits of the petitioner's claims and made no reference whatever to the untimeliness of the application.  The *Lee* Court further noted, in an aside, that two justices, "albeit without written reasons, weighed in on the side of granting the writ."  *Id*. at *6.  In the instant case, however, the ambiguity is far less clear and does not lead to the same result.  Specifically, there is no verbiage addressing the substantive issues presented by Petitioner in his writ application, and the Louisiana Supreme Court clearly indicated that it viewed the earlier-filed writ application *in the same case* to be untimely.  Moreover, the United States Supreme Court, in *Carey v. Saffold, supra*, expressed concern with regard to a lower court's finding that ambiguity in a denial of review of a late-filed writ application warranted a conclusion that the application was timely.  Specifically, the Supreme Court opined that doing so "threatens to undermine the statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims."   536 U.S. at 226. Whereas the Supreme Court in *Carey* ultimately accepted the lower court's determination in that case, a clear distinction existed in that case inasmuch as the state's collateral review system in *Carey* allowed for review applications to be filed within an unspecified "reasonable time" after a lower court's decision whereas the Louisiana system of review has a clear and explicit 30-day limitation that is generally viewed to have no exceptions.

a timely petition. *See Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). Petitioner has made no such showing in this case. Accordingly, there is no legal or factual basis in the record for a finding that Petitioner is entitled to statutory tolling under this section.

Nor is there any basis in the record for equitable tolling in this case. In this regard, the one-year federal limitations period is subject to equitable tolling only "in rare and exceptional circumstances," *see United States v. Patterson*, 211 F.3d 927, 928 (5th Cir. 2000), and the burden is on Petitioner to establish that equitable tolling is warranted. *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009). The doctrine of equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance has stood in his way. *Pace v. DeGuglielmo, supra*, 544 U.S. at 418. Ignorance of the law, lack of knowledge of filing deadlines, or a temporary denial of access to research materials or an adequate law library, are not generally sufficient to warrant equitable tolling. *Tate v. Parker*, 439 Fed. Appx. 375, 376 (5th Cir. 2011); *Felder v. Johnson*, 204 F.3d 168, 171-2 (5th Cir. 2000). Further, equitable tolling "is not intended for those who sleep on their rights." *Manning v. Epps,* 688 F.3d 177, 184 (5th Cir. 2012). Thus, a federal habeas petitioner is required to act with diligence and alacrity both during the period allowed for the filing of state post-conviction review proceedings and also after the denial thereof by the state appellate courts. *See Ramos v. Director*, 2010 WL 774986, *4 (E.D. Tex. March 1, 2010). "The diligence required for equitable tolling purposes is reasonable diligence, ... not maximum feasible

diligence," *Holland v. Florida*, 560 U.S. 631, 653 (2010) (internal quotation marks omitted), and equitable tolling decisions "must be made on a case-by-case basis." *Id.* at 649-50.

In addition to the foregoing, whereas egregious and extraordinary misconduct by a post-conviction attorney may in certain circumstances warrant equitable tolling, a "garden variety claim of excusable neglect" does not rise to this level. *Id*. at 651. *See also Henderson v. Thaler*, 626 F.3d 773, 778 (5th Cir. 2010); *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel"). Ineffective assistance of counsel is irrelevant to the tolling decision because a prisoner has no right to counsel during a post-conviction collateral attack upon a criminal conviction. *United States v. Petty*, 530 F.3d 31, 366 (5th Cir. 2008). Even a petitioner who is represented by incompetent counsel is required to exercise due diligence in pursuing his rights. *See Manning v. Epps*, 688 F.3d 177, 184-85 (5th Cir. 2012). In those cases where attorney misconduct has been found to even approach being sufficiently egregious to potentially warrant equitable tolling, the conduct has involved "far more serious instances of attorney misconduct" than mere attorney error or neglect, as where the attorney has abandoned the petitioner entirely, has falsely and repeatedly misrepresented that a timely petition has been filed, and/or has ignored numerous attempts at contacting the attorney by telephone and correspondence over a long period of time. *See, e.g., Holland v. Florida, supra*, 560 U.S. at 652-53 (concluding that equitable tolling may apply where a petitioner has been actively misled or abandoned by his attorney, but that mere attorney negligence does not suffice).In the instant case, Petitioner failed to show such exceptional circumstances as would entitle him to equitable tolling in this case.[4] Accordingly, his untimely application for habeas corpus relief should be dismissed.

---

4      Moreover, the record does not reflect that Petitioner has shown that he has acted diligently in pursuing his post-conviction relief proceedings. First, he allowed seven months of the limitations

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006) (emphasis in original). In the instant case, the Court finds that reasonable jurists would not debate the denial of Petitioner's § 2254 application or the correctness of the procedural ruling. Accordingly, it is appropriate that, in the event that Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

---

period to elapse before he commenced post-conviction proceedings in state court. Further, upon conclusion of his state post-conviction relief proceedings, through denial of his writ applications by the Louisiana Supreme Court on June 20, 2014, Petitioner then waited an additional three months, until September 10, 2014, to file the instant federal habeas corpus proceeding. This delay is additional evidence of a failure to act diligently and with alacrity in pursuing his federal rights. *See Baker v. Cain*, 2008 WL 3243993, *3 (5th Cir. 2008) (diligence not shown where the petitioner "waited approximately four months to file a federal petition after the Louisiana Supreme Court denied relief"); *Kelly v. Quarterman*, 260 Fed. Appx. 629 (5th Cir. 2007) (same, with four-month delay); *Melancon v Kaylo, supra*, 259 F.3d at 408 (same, with four-month delay). Accordingly, Petitioner has failed to show such diligent conduct as would warrant equitable tolling in connection with his habeas corpus application.

## RECOMMENDATION

It is recommended that Petitioner's application for habeas corpus relief be denied, without prejudice, as untimely. It is further recommended that, in the event that Petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on August 22, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**